UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHRISTOPHER NOWLIN,<br><br>        Plaintiff,<br><br>-vs-<br><br>PEE DEE MENTAL HEALTH CENTER,<br>SOUTH CAROLINA DEPARTMENT OF<br>MENTAL HEALTH,<br><br>        Defendant. | Civil Action No.: 4:07-cv-3676-RBH-TER<br><br>**REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

Plaintiff originally filed this action in the Florence County Court of Common Pleas on October 1, 2007, alleging racial harassment, race discrimination, retaliation and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Defendant removed the action to this Court and filed its Answer on November 9, 2007. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 32).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

Plaintiff, a black male, was an employee of Defendant from February 17, 2004, through October 16, 2006. Plaintiff was employed as a Human Services Specialist I from June 2, 2004, through the end of his employment. EEOC General Intake Questionnaire (attached as Ex. 2 to

Plaintiff's Response). On August 31, 2005, Plaintiff was informed by his supervisor, Greg Killian, the Director of Children's Services, that he was being transferred from the Children's Services Division to the Clinical Day Program. Id. At the time, the Clinical Day Program was having problems with the behavior of the children. Hayes Dep. 17:8-22 (attached as Ex. 7 to Plaintiff's Response). Plaintiff was informed that he was being transferred because Defendant needed a large, black male in the Clinical Day Program. EEOC General Intake Questionnaire. Plaintiff complained to Mr. Killian that he found the comment to be offensive, and Plaintiff and Mr. Killian approached the Executive Director, Willie Bethune, a black male, about the matter. Mr. Bethune confirmed that Plaintiff would be transferred to the Clinical Day Program as soon as possible. Plaintiff was transferred to the Clinical Day Program on September 2, 2005, and was under the supervision of Lauren Killian, Gregg Killian's wife.

On September 30, 2005, Plaintiff became aware of an incident where a coworker, Sammy White, repeatedly used the word "nigger" in a conversation with two students. Hayes Dep. 38:3-5. Plaintiff was not present when the incident occurred. Plaintiff Dep. 78:10-80:1. A client of Defendant told Plaintiff about the incident and Plaintiff and the client approached Ms. Killian about Mr. White's use of the word. Id. at 80:17-81:3. During this conversation, Ms. Killian asked Plaintiff what he would do if someone called him a "nigger." Id. Plaintiff was offended by Ms. Killian's use of the word. Id. at 83:25-84:19. Ms. Killian did tell the employees under her that they could not use the word "nigger;" however, no disciplinary action was taken against Mr. White. Hayes Dep. 35:7-16, 37:2-7.

On October 20, 2005, Plaintiff was assaulted by a client. See Letter to John Connery dated 11/1/05, attached to EEOC General Intake Questionnaire. Plaintiff's thumb was broken during the

assault, which resulted in Plaintiff wearing a cast. Plaintiff Dep. 87:25-88:2. Plaintiff was thereafter transferred to the Choices Charter School, under the supervision of George White, so that he could perform light duty while he was in the cast. Id. at 85:23-86:21.

In a letter to John Connery, Interim Director of the South Carolina Department of Mental Health, dated November 1, 2005, Plaintiff expressed his concerns regarding the reasoning given for his transfer to the Clinical Day Program and Mr. White's use of the word "nigger" and Ms. Killian's subsequent response, discussed above. See Letter to John Connery dated 11/1/05, attached to EEOC General Intake Questionnaire (attached as Ex. 2 to Plaintiff's Response). Plaintiff stated that Ms. Killian had been giving him the silent treatment since he complained. Id. Plaintiff also complained of an unrelated assault on Plaintiff by a client on October 20, 2005, and the response to that incident. Id. Plaintiff complained that the client should have been committed to the hospital but was not. Id. Plaintiff explained in the letter that he felt the assault was not taken seriously. Id. Plaintiff requested that the issues in the letter be addressed by Defendant. Id.

On November 2, 2005, Plaintiff filed a Charge of Discrimination, alleging discrimination based upon race and color. Charge of Discrimination dated 11/2/05, attached as an exhibit to Bowman Dep. (attached as Exhibit 9 to Plaintiff's Response). Plaintiff recounted the reasoning given for his transfer to the Clinical Day Program and Ms. Killian's response to his concerns regarding Mr. White's use of the word "nigger." Id.

On January 4, 2006, Plaintiff filed another Charge of Discrimination, this time alleging retaliation and race discrimination. Charge of Discrimination dated 1/4/06 (attached as Ex.1 to Plaintiff's Response). In addition to the complaints raised in the first charge, Plaintiff complained that, after he raised concerns regarding the use of the racial slur, "Lauren Killian avoided contact

with me, only communicating in writing. After being attacked by a client on October 20, 2005, I was transferred effective November 2, 2005 to a charter school with more acutely disturbed students and more than tripling my daily commute." Id.

Plaintiff was told by Willie Bethune, Director of Pee Dee Mental Health, on January 9, 2006, that he was being transferred to the Florence Center under Olen Cross, Director of the Florence Center. See Letter to Willie Bethune, dated 1/9/06 (attached as an exhibit to Bowman Dep.). In a letter to Willie Bethune dated January 9, 2006, Plaintiff set forth his concerns that he was suffering retaliation as a result of his complaints. Id.

On January 18, 2006, Plaintiff received a memo from Phil Bowman, Interim Director of Pee Dee Mental Health, and Olen Cross that, "due to the changing needs of the agency," he was being reassigned to the Community Support Program and would be under the supervision of Dennis Sullen. Memo dated 1/18/06 (attached as part of Ex. 6 to Plaintiff's Response).

On April 18, 2006, Plaintiff wrote a letter to John Connery complaining of constant harassment by Dennis Sullen. Letter to John Connery dated 4/16/06 (attached as an exhibit to Bowman Dep.). Plaintiff complains that Mr. Sullen constantly harassed him to sign his Employee Performance Management System, which appears to be a performance evaluation, but that Plaintiff did not feel comfortable signing it. Id. It is not clear from the evidence cited by Plaintiff what concerns he had with the EPMS. In the letter, Plaintiff also complained that he submitted paperwork to the Human Resources Manager for a salary increase six months prior but was told on numerous occasions that he would not receive an increase per Phil Bowman. Id.

On October 17, 2006, Plaintiff received a memo from Gail Blue, TLC Program Coordinator, that he was being transferred to the TLC-Supervised Apartments Program. Memo dated 10/17/06

(attached as an exhibit to Bowman Dep.).

On October 20, 2006, Plaintiff tendered his resignation, citing October 16, 2006, as his last day. Memo dated 10/20/06 (attached as an exhibit to Bowman Dep.).

On March 29, 2007, the EEOC issued a determination regarding Plaintiff's Charge of Discrimination dated January 4, 2006. EEOC Determination Letter (attached as Ex. 3 to Plaintiff's Response). The District Director for the EEOC found that "[e]xamination of the evidence reveals that Charging Party was transferred to the Clinical Day Treatment Program because he is a Black male. Evidence also reveals within a month of reporting the use of racial slurs in the workplace, Charging Party was again transferred or reassigned. Based on this analysis, I have determined that there is reasonable cause to believe that Charging Party was discriminated against in violation of Title VII." Id.

In a letter stamped July 3, 2007, the United States Department of Justice notified Plaintiff that it would not file suit on the Charge of Discrimination that was referred to them by the EEOC. Letter dated 7/3/07 (attached as Ex. 4 to Plaintiff's Response). The letter further provided that "this should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious." Id. The letter informed Plaintiff of his right to file suit within 90 days of receipt of the letter. Id.

Plaintiff filed the present action on October 1, 2007.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through

"depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

Plaintiff presents his claims as racial harassment, racial discrimination, and retaliation/constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Each of Plaintiff's claims will be discussed in turn.

### A. Racial Harassment

Plaintiff essentially argues that he was subjected to a racially hostile work environment. Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race, which includes creating or allowing a hostile work environment based on race. 42 U.S.C. § 2000e-2(a); EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 2009 WL 2152348 (4th Cir.2009). To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Gilliam v. South Carolina Department of Juvenile Justice, 474 F.3d 134, 142 (4th Cir.2007); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir.2003) (en banc).

First, Plaintiff must produce sufficient evidence to show that the conduct about which he complains is based upon his race. Plaintiff "must show that 'but for' [his] race ... [he] would not have been the victim of the alleged discrimination." Gilliam, 474 F.3d at 142 (quoting Causey v. Ballog, 162 F.3d 795, 801 (4th Cir.1998)). Plaintiff points to two instances where he asserts he was

subjected to negative racial comments by different supervisors. The first instance occurred when he was told by his supervisor, Greg Killian, that he was being transferred to the Clinical Day Program because a large, black male was needed in the program. The second instance occurred when he was discussing with Lauren Killian Sammy White's use of the word "nigger" in a conversation with students, and Ms. Killian asked Plaintiff what he would do if someone called him a "nigger." Plaintiff also complains that no corrective action was taken when he complained of these incidents.

Plaintiff stresses that his harassment was not limited to these two instances. He argues that there were several incidents of racial insensitivity on the part of his supervisors. However, other than Mr. White's conversation with students about the term "nigger," for which Plaintiff admits he was not present, Plaintiff points to no other, specific instances of racial harassment. Nevertheless, the comments of Greg and Lauren Killian were clearly racially charged.

Second, Plaintiff must show that the comments were unwelcome. Plaintiff has presented evidence indicating that he complained of both comments at the time they occurred or shortly thereafter. Thus, he has shown that the comments were unwelcome.

Third, Plaintiff must present evidence that the harassment was sufficiently severe or pervasive to create an abusive working environment. Plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Title VII is not a "general civility code." Oncale v. Sundowner

Offshore Services, Inc., 523 U. S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir.2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." Id.

The Fourth Circuit has utilized a four factor approach to evaluate the totality of the circumstances in determining whether conduct is severe or pervasive: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance. Connor v. Schrader Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000). Here, the incidents about which Plaintiff complains are a "limited number of incidents that are more reflective of run of the mill uncouth behavior than an atmosphere permeated with discriminatory ridicule and insult." Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675, 678 (7th Cir. 2005). As the Fourth Circuit has observed, "Title VII is not a federal guarantee of refinement and sophistication in the workplace." Hartsell v. Duplex Products, 123 F.3d 766, 773 (4th Cir. 1997). Nothing in the first comment, that Plaintiff was being transferred to the Clinical Day Program because the program needed a large, black male, indicates that Mr. Killian was speaking to Plaintiff in a derogatory manner. In a memorandum to Phil Bowman, Mr. Killian explained the choice of Plaintiff for the Clinical Day Program:

> It became immediately apparent that the clients, who had been referred [to the Clinical Day Program], were much more hostile, aggressive, and disturbed than we had anticipated. The director of the Clinical Day Program and I met with Mr.

> Bethune [Director of the Pee Dee Department of Mental Health at the time] to discuss possible solutions. Mr. Bethune, who happens to be an African American male, suggested that the program needed African American, male role models to work with the adolescent, African American males in the program.
>
> Mr. Bethune decided that he would, by Executive Order, transfer at least two African American males from other PDMHC offices to the Clinical Day Program.

Memo dated March 2, 2006 (attached as an exhibit to Bowman Dep.). While Mr. Killian's comment may have been subjectively offensive to Plaintiff, it cannot be seen as objectively offensive under the circumstances.

The incidents involving Ms. Killian require more analysis. In the light most favorable to Plaintiff, Plaintiff was present when a client complained to Ms. Killian that White had repeatedly used the word "nigger" and that Ms. Killian told White to refrain from use of such language dubt did not otherwise discipline White. Also, Ms. Killian inquired of Plaintiff what his reaction would be if he was called "nigger."

"Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African-Americans. 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.'" White v. BFI Waste Services, LLC, 375 F.3d 288, 297 (4th Cir. 2004) (citing Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993)). Certainly, Ms. Killian's conduct was both subjectively and objectively insensitive and offensive. However, isolated incidents must be extremely serious to amount to changes in the terms and conditions of employment. Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006) (citing Faragher, 524 U.S. at 788). The conduct is far less severe or pervasive as that found in Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001). The

conduct here was no directed at Plaintiff, occurred on isolated occasions, and, although serious, the use of the epithet was not directed at Plaintiff in a discriminatory context.

Plaintiff stresses that the racially hostile work environment was not created by Mr. and Mrs. Killian's comments alone. However, the additional unwelcome conduct on the part of Plaintiff's supervisors, such as the frequent transfers, failure to give Plaintiff a pay increase, or the concerns Plaintiff had with his evaluation, is not properly considered under Plaintiff's cause of action for <u>a racially</u> hostile environment because the record evidence fails to support a finding that this unwelcome conduct was a result of Plaintiff's race.[1]

In sum, Plaintiff fails to present evidence sufficient to show "a workplace permeated by racism, by threats of violence, by improper interference with work, or by conduct resulting in psychological harm." <u>Jordan</u>, 458 F.3d at 340. Therefore, summary judgment is appropriate as to this claim.

### B. Racial Discrimination

A plaintiff may prove a Title VII discrimination claim against her employer with direct evidence of racial discrimination or by using circumstantial evidence and the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) to create an inference of discrimination. <u>Lightner v. City of Wilmington</u>, 545 F.3d 260 (4th Cir. 2008); <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284-86 (4th Cir. 2004) (en banc). Plaintiff asserts in his Response that he is required to utilize the burden-shifting test under <u>McDonnell Douglas</u>.

To establish a prima facie case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse

---

[1]Plaintiff's allegations of retaliation, including retaliatory harassment, are discussed below.

employment action he was performing up to his employers expectations; and (4) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. Carter v. Ball, 33 F.3d 450, 458 (4th Cir.1994).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

In the present case, Defendant does not dispute that Plaintiff falls within a protected class or that his job performance met his employer's legitimate expectations. However, Defendant argues that Plaintiff did not suffer an adverse employment action. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir.2004). "A

tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Defendant argues that Plaintiff's reassignment to the Clinical Day Program was not an adverse employment action. Plaintiff argues that the adverse employment action he suffered is not limited to that reassignment but includes all the harassment he faced during his employment. However, the only employment action taken by Defendant against Plaintiff that could possibly give rise to an inference of racial discrimination is the reassignment to the Clinical Day Program, and thus, the Court must determine if such action was "adverse."

A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir.1999). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. at 256-57; see also Taylor v. Virginia Dep't of Corrs., 177 F.Supp.2d 497, 504-05 (E.D.Va.2001). A mere change in an employee's job assignment, even if "less appealing to the employee, ... does not constitute adverse employment action." Booz-Allen, 368 F.3d at 376. Plaintiff fails to point to evidence that his reassignment to the Clinical Day Program resulted in any decrease in compensation, job title, level of responsibility, opportunity for promotion or that the reassignment had any other significant detrimental effect. Accordingly, Plaintiff has failed to show that he suffered an adverse employment action and, thus, has failed to establish a

prima facie case of racial discrimination. Therefore, summary judgment is appropriate on Plaintiff's racial discrimination claim.[2]

      **C.**      **Retaliatory Harassment/Retaliation/Constructive Discharge**

Plaintiff frames his last claim as one for "retaliatory harassment/retaliation/constructive discharge." It appears that Plaintiff is alleging that Defendant retaliated against him following his complaints of racial discrimination and the harassment led to his constructive discharge.

The McDonnell Douglas burden-shifting analysis also applies to claims of retaliation. To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him (including actions that a reasonable employee would have found to be materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination), and (3) a causal connection existed between the protected activity and the adverse action. Matvia v. Bald Head Island Mgmt, Inc., 259 F.3d 261, 271 (4th Cir. 2001); Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff engaged in protected activity when he filed a Charge of Discrimination with the EEOC. Laughlin v. Metropolitan Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va.1997), aff'd, 149 F.3d 253 (4th Cir.1998) (filing an administrative charge of discrimination is protected activity). An informal, verbal complaint of discrimination made to a supervisor is also considered a protected act. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Defendant does not dispute that Plaintiff engaged in protected activity.

---

[2]The undersigned will not address the remainder of the McDonnell Douglas analysis because Defendant's analysis of Plaintiff's claim ends with the prima facie discussion.

Plaintiff must next show that he suffered an adverse employment action. The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 64 (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

Plaintiff asserts that he suffered adverse employment action when he was transferred on numerous occasions following his complaints. Following the first transfer to the Clinical Day Program, Plaintiff was transferred on three additional occasions–on November 1, 2005, January 9, 2006, and January 18, 2006. Defendant attempted to transfer Plaintiff again on October 17, 2006, but Plaintiff submitted his resignation to be effective October 16, 2006. Such retaliatory harassment could have dissuaded a reasonable employee from making or supporting a charge of discrimination and, thus, is an adverse employment action.[3]

Plaintiff must next show a causal connection between his protected activity and the adverse employment action. A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of

---

[3] Plaintiff also states in his Response that the "false EPMS" constituted an adverse employment action. Plaintiff's Response at 19. However, as stated above, it is not clear from the record presented what concerns Plaintiff had with which EPMS.

the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Plaintiff's November 2, 2005, transfer came one day after his November 1, 2005, letter to John Connery, wherein Plaintiff complained of his transfer to the Clinical Day Program based upon his race and Mr. White's and Ms. Killian's use of the racial slur. Plaintiff's next two transfers came five and thirteen days, respectively, after his January 4, 2006, Charge of Discrimination. Because of the proximity of these transfers to Plaintiff's complaints of racial discrimination and harassment, Plaintiff has shown a causal connection between the protected activity and the adverse employment action, and, thus, has created a prima facie case of retaliation.

Pursuant to McDonnell Douglas, Defendant must next produce a legitimate, non-retaliatory reason for the adverse employment action. However, Defendant has failed to meet this burden. As with the racial discrimination claim, Defendant's argument on the retaliation claim ends with its position that Plaintiff suffered no adverse employment action. It does not present a legitimate, non-retaliatory reason for Plaintiff's multiple transfers or reassignments following his complaints of racial discrimination. Accordingly, Defendant's Motion for Summary Judgment should be denied as to Plaintiff's retaliation claim.

Plaintiff also includes constructive discharge within his retaliation claim. In a "constructive discharge claim ... [a] plaintiff ... must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 146-47, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Plaintiff must demonstrate "(1) that the employer's actions were deliberate, and (2) that working conditions were intolerable." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir.2006). "An employer's actions are deliberate only if they were intended by the employer as an effort to force the plaintiff to quit." Id. (internal quotation marks omitted). "Whether an employment environment is intolerable is determined from the objective perspective of a reasonable

person." Id. (internal quotation marks omitted). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Id. (internal quotation marks omitted). Plaintiff asserts that "his employment was rampant with acts of hostility and issues of retaliation that he continuously complained about and the Defendant failed to conduct any investigation into. The environment created by the acts of the Defendant in constantly transferring Plaintiff and harassing the Plaintiff regarding his [EPMS] would lead any reasonable person to resign their employment." Plaintiff's Response at 21.

An employer's "intent may be inferred from a failure to act in the face of known intolerable conditions." Amirkori v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1133 (4th Cir.1995) (emphasis added). Plaintiff's burden of establishing intolerability is not light:

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign[;] ... [r]ather, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign–that is, whether he would have had no choice but to resign.

Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir.1996) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985) (internal citations and quotations omitted)). See also Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 273 (4th Cir.2001) (Denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position ... would not have compelled the reasonable person to resign. These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable."); Carter v. Ball, 33 F.3d 450, 459 (4th Cir.1994) ("Dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir.1998) ("More than ordinary

-17-

discrimination is necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress"); Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir.1994), cert. denied, 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether his repeated transfers would compel an objectively reasonable employee to resign his position. For these reasons, summary judgment is inappropriate on Plaintiff's claim of constructive discharge.

## V. CONCLUSION

In sum and for the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 32) be granted in part and denied in part. Specifically, it is recommended that summary judgment be granted as to Plaintiff's racially hostile environment claim and race discrimination claim and that summary judgment be denied as to Plaintiff's retaliatory harassment/retaliation/constructive discharge claim.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 28, 2010
Florence, South Carolina